```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Hong Sup Kim, et al.,              :

    Plaintiffs,                :

  v.                               :     Case No. 2:14-cv-00591

Kee Hoon Lee,                      :     Magistrate Judge Kemp

    Defendant.                 :

## OPINION AND ORDER

This matter is before the Court on Defendant Kee Hoon Lee's motion for summary judgment as to all causes of actions asserted against him by Plaintiff Hong Sup Kim (Doc. 30) and Plaintiffs' motion for summary judgment (Doc. 31). Both motions have been fully briefed and are now ripe for consideration. For the reasons set forth below, Mr. Lee's motion for summary judgment will be granted as to the claims asserted by Hong Sup Kim in Counts I-III of the complaint and denied as to that Plaintiff's claim in Count IV. Plaintiffs' motion for summary judgment will also be denied.

## I. Factual Background

There are two plaintiffs in this case. Plaintiff Pan Soo Kim is the pastor of an outreach church in South Korea, where he resides and is a citizen. Plaintiff Hong Sup Kim is his son. He is a citizen of South Korea and resides in Virginia. The Defendant, Kee Hoon Lee, was born in South Korea but is a naturalized citizen of the United States and resides in Ohio.

In early 2007, Pan Soo Kim (who will be referred to as "Mr. Kim" to distinguish him from his son, who will be referred to by his full name) and Mr. Lee traveled to Los Angeles for a church revival event. While there, they met with Pastor Moo Soo Park, who is the head minister of a church of the same denomination as

Mr. Lee's church, and whom Mr. Kim considers to be his mentor. At this meeting, Mr. Kim and Mr. Lee discussed Mr. Lee's plans to purchase a Howard Johnson motel in Cincinnati, Ohio.  Mr. Lee was already operating a profitable Super 8 Motel in Columbus, Ohio, and wanted to purchase another motel.  Pastor Park suggested that Mr. Kim could provide funds to Mr. Lee to assist in the purchase. (Doc. 29-1, at 19-22).  Mr. Kim claims that his understanding was that any funds that he would provide would be a personal loan to Mr. Lee.  (Doc. 1, Ex. A).  Mr. Lee disagrees and states that Mr. Kim knew and understood that the funds provided were intended as an investment in a new motel business, not a personal loan. (Doc. 34, Affidavit of Kee Hoon Lee, ¶ 4-5).

Mr. Lee followed up with a number of phone calls to Mr. Kim requesting him to transfer funds, and Mr. Kim ultimately made arrangements through a number of friends and family members to supply the funds to Mr. Kim.  Between January 30 and February 12, 2008, six wire transfers were made on behalf of Mr. Kim by various people into a bank account owned by Mr. Lee.  A $100,000 transfer was made by Plaintiff Hong Sup Kim.  Mr. Kim asserts that these transfers totaled $340,000, but  Mr. Lee disputes this amount and claims that he only received a total of $300,000. (Doc. 32-1 at 38).  Mr. Kim and Mr. Lee did not enter into any written agreement about the money transfers or the motel purchase.  According to Mr. Lee, he and Mr. Kim agreed that they would each contribute $300,000 to the motel purchase, and that although he would not be listed as an owner of the property, Mr. Kim would be entitled to 50% of the net profits of the motel as a "silent partner."  (Doc. 34, Affidavit of Kee Hoon Lee, at ¶ 5). However, Mr. Kim testified in his deposition that, although a formal loan agreement was not in place, he expected to be reimbursed "within a year."  (Doc. 29-1 at 97).

Mr. Lee purchased the Howard Johnson motel on February 19,

2008, in the name of Eastern Eagle One, an Ohio corporation of which he and his wife, Ju Hee Lee, are the only shareholders.  A document supplied by Mr. Lee referred to as a Closing Statement notes a $300,000 "investment" each by Pam Soo Kim and Ju Hee Lee. The document appears to have been prepared by Mr. Lee and does not refer to Eastern Eagle One Corporation as the owner of the property or to the full details of the real estate purchase. (Doc. 34, Ex. A).  Mr. Lee states that he sent the Closing Statement to Mr. Kim on February 21, 2008, and Mr. Kim did not object to its content, including the reference to his contribution as an "investment" rather than as a loan.  The parties agree that Mr. Kim did not wish or intend to participate in any direct management of the motel.

During 2008 into 2009 both of Mr. Lee's motels suffered financial problems due to a poor economic climate, and on about June 2, 2009, Mr. Lee contacted Mr. Kim by phone and email, requesting additional funds in the amount of $100,000 to fund certain repairs and other expenses required for the Howard Johnson.  However, Mr. Kim declined to provide more money.  Id.

In September, 2009, Mr. Kim asked Mr. Lee for full repayment, including 7.3% interest, by October 15, 2009.  Mr. Lee responded with a number of emails, making the following statements in emails sent in September of 2009:

> "Now, I would like to go over interest and principal payments...... First, I am fully aware [Mr. Kim] has never participated in any management of this hotel.... Therefore, it is most logical to believe that I obtained a loan of $300,000 from a bank, named Reverend Pan Soo Kim." (Doc. 31-2 at 20).

> "Since my motel is under unfavorable financial conditions, I will pay you $10,000 first even though I would like to pay you in full.  When calculated, the annual interest payment is amounted to $21,000.  And for the $300,000, I

3

> will pay you back first as soon as one of my two motels is sold.  I will pay you 7% interest first ..." <u>Id</u>.
>
> "I told you, even twice, that I will pay you back your interests by borrowing money from somebody else albeit the financial situation of the motel is dire." (Doc. 31-2 at 25).
>
> "I will do my best for my responsibilities in regards to your investment of $300,000 here, but now it is impossible at this time.  I will definitely pay you back first if God helps to sell any one of my hotels before the date of your wish [sic]." <u>Id</u>.

Apparently these emails were in response to messages sent by Mr. Kim, but Mr. Kim states that his computer hard drive and flash drive were both destroyed in an electrical storm and the Korean email provider he was using at the time had ceased to exist, so Mr. Kim's emails are not part of the record.  Mr. Lee asserts that he was not obligated to repay Mr. Kim because the Howard Johnson motel never turned a profit, and that he only agreed in the emails to pay back the investment money because Mr. Kim was damaging his reputation by speaking to members of the church about the situation.  (Doc. 34, Affidavit of Kee Hoon Lee at ¶ 12).  Mr. Lee was unable to sell the Howard Johnson motel and it was ultimately reverted to the ownership of the Howard Johnson Corporation.  (Doc. 32-1, at 87).

   On or about November 11, 2010, Mr. Lee and his wife filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio (See Case No. 1:10-bk-17724). The bankruptcy filing did not list either of the plaintiffs in this case or any of the individuals who made transfers to Mr. Lee as creditors.  Mr. Lee and his wife received a standard discharge on March 22, 2011, which did not include the alleged debt to Plaintiffs.  On or about January 15, 2014, counsel for Plaintiffs

4

served Mr. Lee with a demand letter for payment in full of the debt as well as 7.3% annual interest.  The total amount allegedly due at that time was $532,627.71.  When Mr. Lee did not pay, this lawsuit followed.

## II. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56©, demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  "[I]f the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted."  Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995)(citation omitted).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motions must be decided.

### III. Defendant's Motion for Summary Judgment as to all Causes of Action Asserted by Hong Sup Kim

In his motion for summary judgment, Mr. Lee asserts four reasons why judgment should be granted on all causes of action brought by Hong Sup Kim. They will be addressed in turn below.

#### A. Standing/Real Party in Interest

A cause of action brought on behalf of a plaintiff requires the plaintiff to be the real party in interest. Fed. R. Civ. P. 17(a). The real party in interest in whose name the action must be brought is one who is directly benefitted or injured by the outcome of the case. State, ex rel. Dallman v. Court of Common Pleas, 35 Ohio St.2d 176 (1973). Mr. Lee argues that Hong Sup Kim has no standing to bring any claims because all the funds that were transferred to Mr. Lee belonged to Hong Sup Kim's father. (Doc. 29-1, at 49). Mr. Lee also argues that he and Hong Sup Kim did not reach either an express or implied agreement that the money was to be a loan, and that Hong Sup Kim only transferred the funds based on his father's instruction. (Doc. 28-1, at 9-14).

It is important to distinguish between the concept of standing, which is embodied in Article III, Section 2 of the United States Constitution, and the real party in interest requirement set out in Rule 17 of the Federal Rules of Civil Procedure. This distinction was recently clarified by the Court of Appeals in Cranpark, Inc. v. Rogers Group, Inc., Case Nos. 14-3725/3832 (6th Cir. April 22, 2016). To establish Article III

standing, a plaintiff must have suffered an injury in fact, show that the injury is fairly traceable to the defendant's conduct, and demonstrate that a favorable decision by the court must be likely to redress the plaintiff's injury. Id. at 5, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). The real party in interest requirement simply requires that an action must be brought in the name of the real party in interest, or the person who is entitled to enforce the right asserted under governing law. Cranpark, supra at 6.

The depositions of the plaintiffs show that there is a factual dispute about this issue. Mr. Kim stated that the $100,000 transferred to Mr. Lee by Hong Sup Kim consisted only of Mr. Kim's own money, and that is why he did not reimburse his son for the transferred funds (Doc. 29-1, at 44, 49). However, Hong Sup Kim testified that at least a portion of the money transferred to Mr. Lee came from his own savings he had accumulated while working in Korea prior to moving to America (Doc. 28-1, at 22-23). This inconsistency raises a material issue of fact in relation to whether Hong Sup Kim is the real party in interest or whether he has standing to seek return of some or all of the $100,000, and for that reason the court cannot grant summary judgment on those issues.

B. Existence of Contract Between Hong Sup Kim and Mr. Lee

This argument is raised with respect of Counts I and II of the complaint only, which plead claims for breach of express and/or implied contract and breach of oral contract. The elements of a contract include offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and consideration. Lake Land Emp. Group of Akron, L.L.C. v. Columber, 101 Ohio St.3d 242 (2004). Ohio law recognizes three types of contracts: express, implied in fact, and implied in law. Legros v. Tarr, 44 Ohio St.3d 1, 6 (1989).

"While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven vary depending on the nature of the contract." <u>Reali, Giampetro & Scott v. Soc. Natl. Bank</u>, 133 Ohio App.3d 844, 849 (1999). In an express contract, the terms are formally expressed in the offer and acceptance of the parties. <u>Id</u>.

Implied contracts are not created or evidenced by explicit agreement of the parties; rather, they are implied by fact or by law as a matter of reason and justice. <u>Union Sav. Bank v. Lawyers Title Ins. Corp.</u>, 191 Ohio App.3d 540, 547-548 (Franklin Co. 2010). An implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement. <u>Id</u>. The requirement for meeting of the minds can be established by showing a pattern of behavior that is consistent with a contractual relationship. <u>Stepp v. Freeman</u>, 119 Ohio App.3d 68 (Montgomery Co. 1997). As an example, in <u>Stepp</u>, a group of co-workers engaged in a long-term lottery pool between 20 members. The group had a set number of members and process, and the plaintiff had been a member of the pool for five years. Members would often cover the contribution to purchase the lottery tickets for each other if they could not be located immediately to contribute. The group eventually won a significant sum of money. Because the plaintiff had not yet paid for his share of the ticket, the other members of the pool maintained that they did not owe his share of the lottery winnings. The appellate court, affirming the trial court's decision in favor of the plaintiff, held that the ongoing behavior of the parties was sufficient to demonstrate an implied-in-fact contract. <u>Id</u>.

The parties agree that no formal loan or investment

agreement was drawn up when the money was transferred.  Hong Sup Kim testified that he never had any discussions with Mr. Lee around that time, and only made the transfer because his father asked him to do so.  (Doc. 28-1, at 25, 37).  He also admitted that the original understanding about the purpose for the fund transfer (whatever that may have been) was reached between his father and Mr. Lee, and he was not involved in those discussions. Id. At 72.  Consequently, although Hong Sup Kim may have suffered a loss as a result of the loan or investment to Mr. Lee, the record is clear that the initial relationship and discussions were between Mr. Kim and Mr. Lee.  There is also no evidence of any agency relationship between Hong Sup Kim and his father, and Hong Sup Kim's brief does not argue that point.  Even construing the evidence in the most favorable light to Hong Sup Kim, the Court agrees with Mr. Lee that no contract claim can be maintained on these facts.  Consequently  he is entitled to judgement as a matter of law as to Hong Sup Kim's claims in Counts I and II of the complaint.

### C. Promissory Estoppel

To prevail on a claim of promissory estoppel, a plaintiff must prove that (i) the defendant made a clear and unambiguous promise to the plaintiff; (ii) a reasonable person in the plaintiff's position would have relied on such a promise; (iii) that reliance was reasonable and foreseeable; and (iv) the person claiming reliance was injured as a result of the reliance and injustice can be avoided only by enforcement of the promise. Stewart v. Everywhere Global, Inc., 68 F.Supp.3d 759, 766 (S.D. Ohio 2014).  A plaintiff seeking this type of relief must point to specific promises, and cannot rely on assumptions or nebulous representations.  Penwell v. Amherst Hospital, 84 Ohio App.3d 16, 20 (Lorain Co. 1992).

Hong Sup Kim's promissory estoppel claim fails for the same

9

reason as his contract claims.  Again, the allegations in the complaint and the factual record show that any initial promise made about the funds provided would have been by Mr. Lee to Mr. Kim. Hong Sup Kim was not involved in those discussions, nor did he have relevant interactions with Mr. Lee until much later.  In his deposition, Hong Sup Kim testified:

> "Q   It's [the wire transfer to Mr. Lee] not a loan to your father?
>
> A   Not a loan.
>
> Q   So then he wouldn't have to pay you?
>
> A   He could pay me in good faith because he told me to transfer the funds to Mr. Lee, and I believed – I mean, I trust what he said and based on the conversation between my father and Mr. Lee.  So maybe he can, you know, pay me if he got paid."

(Doc. 28-1 at 37).  There is simply no evidence here that a clear unambiguous promise was made directly to Hong Sup Kim by Mr. Lee. Although the record reflects that Hong Sup Kim eventually communicated with Mr. Lee about the motel loan or investment, he was not directly promised anything by Mr. Lee before he transferred the money.  For these reasons, the Court agrees that Plaintiff Hong Sup Kim fails to state a claim for promissory estoppel.

### D.  Unjust Enrichment

Unjust enrichment is an equitable remedy in which a person who has unjustly benefitted at the expense of another is required to make restitution to the other.  Unjust enrichment occurs when (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment.  Desai v. Franklin, 177 Ohio

10

App.3d 679, 689 (Summit Co. 2008), <u>citing</u> <u>Chef Italiano v. Crucible Dev. Corp.</u>, 2005 WL 1963027 (Summit Co. App. 2005). Further, the Ohio Supreme Court has observed that, "[i]n contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain...." <u>Hummel v. Hummel</u>, 40 Ohio St. 520 (1938).

    Mr. Lee argues that Hong Sup Kim is unable to prove the elements of unjust enrichment because the funds he transferred belonged to his father. However, as discussed above, there is a question of fact as to whether a portion of the funds transferred belonged to Hong Sup Kim. Hong Sup Kim's name appears on the wire transfer statement to Mr. Lee, so Mr. Lee knew or should have known of the possibility that the funds belonged to Hong Sup Kim. (Doc. 31, Exhibit 3). Presuming, for the purposes of this motion, that some of the funds transferred belonged to Hong Sup Kim, there is therefore a material question of fact as to whether Mr. Lee was aware that he was obtaining a benefit from Hong Sup Kim. There is also a factual question as to whether it was unjust for Mr. Lee to retain that benefit by not repaying the funds to Hong Sup Kim. For that reason, the Court will deny Mr. Lee's motion for summary judgment on Count IV of the complaint.

    IV.  <u>Plaintiffs' Motion for Summary Judgment</u>

    As set out above in detail, to obtain a summary judgment a party must demonstrate the absence of a material factual dispute and an entitlement to judgment as a matter of law. Plaintiffs' motion contains a section entitled "Undisputed Facts" which purportedly entitle them to summary judgment, but the record shows many of these facts to be disputed. It is true that Mr. Kim testified that he "gave money to Kee Hon Lee as a loan and [Mr. Lee] was supposedly purchasing the hotel, motel as a gift to [Pastor Park] and that's what I was aware of." (Doc. 29-1 at

11

29). Plaintiffs also contend, in support of their claim that the first transfer of funds was a loan, that Mr. Lee requested an "additional loan" of $100,000 in an email to Mr. Kim on June 13, 2009. However, the relevant portion of the email, translated from Korean, states:

> "I know that I am not in a good situation and entitled to ask, but I have to ask you [Pastor Park and Mr. Kim]. In total, I should have around $100,000 to fix Howard Johnson. I do not have any money to pay taxes. Please help. And please forgive."

(Doc. 31-2 at 14). This statement can be construed as consistent with asking either for a loan or an additional investment.

The most significant issue of fact in dispute is the nature of the transaction through which Mr. Lee received at least $300,000 in funds by or on behalf of Mr. Kim. The parties simply do not agree about whether the funds were intended as an investment or a personal loan. Even Plaintiffs admit that Mr. Lee told Pastor Park and Mr. Kim that "he needed the funds for the acquisition of a new hotel without specifying the details." (Doc. 29-1 at 154-155). Although Mr. Lee stated in later emails that he intended to reimburse Mr. Kim with interest, the first of these communications came more than 18 months after the purchase of the Howard Johnson. Mr. Lee testified that his intention was to split any profit from the motel with Mr. Kim and that Mr. Kim wanted his portion of the profit for the advancement of the church. Mr. Lee's and Mr. Kim's intentions at the time of the funds transfer is disputed and is the key issue on which each of the causes of action turn. Summary judgment is simply not appropriate on those claims.

In his brief in opposition, Mr. Lee also argues that the Court should deny the motion because their claims are barred by the doctrine of laches, an affirmative defense raised in the answer to the complaint. Laches is an omission to assert a right

12

for an unreasonable and unexplained length of time which operates to unfairly prejudice the other party. <u>Connin v. Bailey</u>, 15 Ohio St.3d 34, 35 (1984). Mr. Lee points out that the Plaintiffs' first demand for repayment was made in September 2009, more than 18 months after the funds transfer, and that they did not file their complaint for nearly five years after the demand. Mr. Lee also notes that the only material witness to the parties' mind set at the time of the agreement to transfer funds, other than the parties themselves, was Pastor Park. Pastor Park has been in a comatose state due to illness for three or four years and is unable to testify or provide an affidavit. Finally, Mr. Lee argues that Mr. Kim failed to maintain vital evidence by disposing of his computer on which relevant emails were exchanged. (Doc. 34 at 17).

Because the Court is denying the Plaintiffs' motion for other reasons, it is not strictly necessary to address this issue. However, the Court notes that Mr. Kim testified that although he originally demanded payment in full by October 15, 2009, he waited until January of 2014 to have his attorney submit another demand letter because he trusted Mr. Lee's promises to repay him (Doc. 29-1 at 58-60). Mr. Kim has also stated that the computer records of his email exchanges with Mr. Lee were destroyed through no fault of his own (Doc. 29-2 at 113-122). One of the elements of the doctrine of laches is the reasonableness of the behavior of the party who allegedly acted or failed to act and thus prejudicing the other party. Many facts of this case are in dispute, including the facts upon which the doctrine of laches depends. Consequently, the Court cannot grant summary judgement to Mr. Lee based on the doctrine of laches.

V. <u>Conclusion</u>

Based on the foregoing, Mr. Lee's motion for summary

13

judgment as to causes of action brought against him by Hong Sup Kim  (Doc. 30) is granted as to Counts I-III and denied as to Count IV.  Plaintiffs' motion for summary judgment (Doc. 31) is denied.  Counsel shall promptly contact the undersigned's courtroom deputy, Spencer Harris, to obtain a trial date.


/s/ Terence P Kemp
United States Magistrate Judge